# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF ANTHONY NORCZYK, by
STEPHANIE PANTTI, Personal Representative,

        Plaintiff-Appellee,

v

KYLE DANEK, DDS, and MICHIGAN
COMMUNITY DENTAL CLINICS, INC., doing
business as MARQUETTE COMMUNITY
DENTAL CLINICS,

        Defendants,

and

NELSON GENCHEFF, D.O., and DLP
MARQUETTE GENERAL HOSPITAL, LLC,
doing business as UP HEALTH SYSTEM -
MARQUETTE,

        Defendants-Appellants.

FOR PUBLICATION
October 16, 2018
9:00 a.m.

No. 339713
Marquette Circuit Court
LC No. 16-055168-NH

---

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

MURPHY, P.J.

        In this medical malpractice action, defendants-appellants, Nelson Gencheff, D.O., and DLP Marquette General Hospital, LLC, appeal by leave granted[1] the trial court's order denying their motion for summary disposition. The motion was pursued on the basis that plaintiff's affidavit of merit was defective because it was executed by a physician who was unqualified to render an expert opinion on the applicable standard of care. For the reasons stated below and pursuant to our Supreme Court's opinion in *Woodard v Custer*, 476 Mich 545; 719 NW2d 842 (2006), we affirm.

---

[1] *Estate of Norczyk v Danek*, unpublished order of the Court of Appeals, entered February 28, 2018 (Docket No. 337913).

-1-

Plaintiff's decedent, Anthony Norczyk, died in May 2014 following a series of complications after having all of his teeth extracted. Prior to his death, Norczyk was taken to Marquette General Hospital, where Gencheff, a board-certified cardiologist and interventional cardiologist, was consulted and provided recommendations concerning Norczyk's medical treatment. It was alleged in plaintiff's complaint that Gencheff was negligent and breached the duty owed to Norczyk in several ways, including by failing to provide immediate and prompt cardiology care, failing to recognize that Norczyk exhibited signs of acute coronary syndrome (ACS) requiring immediate cardiac treatment, failing to promptly pursue a cardiac catheterization and initiate an optimal plan of revascularization upon recognition of ACS, and failing to prevent further harm to Norczyk. Plaintiff supported the complaint with an affidavit of merit executed by Dr. Joshua Furman, a board-certified cardiologist.

Defendants filed a motion for summary disposition, arguing that because Furman was only a board-certified cardiologist and not a specialist in interventional cardiology, he was not a qualified expert for purposes of the affidavit of merit. The trial court denied defendants' motion, reasoning as follows:

> The Court is persuaded by Plaintiff's argument. Plaintiff's complaint makes a variety of allegations about Dr. Gencheff's failure to act. Though the timing of the catheterization is one of those allegations, the dominant feature of Plaintiff's claims is the timeliness of response in general. As Dr. Gencheff responded to a call from the emergency room, it appears that his role as a general, on-call cardiologist was the most relevant specialty at the time.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Additionally, this case involves the interpretation and application of MCL 600.2169, along with Furman's qualifications as an expert, and in *Woodard*, 476 Mich at 557, our Supreme Court observed:

> These cases involve the interpretation of MCL 600.2169(1). This Court reviews questions of statutory interpretation de novo. However, this Court reviews a trial court's rulings concerning the qualifications of proposed expert witnesses to testify for an abuse of discretion. An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes. [Citations omitted.]

MCL 600.2912d(1) requires a plaintiff alleging a claim of medical malpractice to "file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169." And MCL 600.2169 provides, in relevant part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

-2-

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

With respect to the construction of MCL 600.2169(1)(a), the Supreme Court in *Woodard*, 476 Mich at 558-559, explained:

Although specialties and board certificates must match, not *all* specialties and board certificates must match. Rather, § 2169(1) states that "a person shall not give expert testimony on the *appropriate* standard of practice or care unless . . . ." That is, § 2169(1) addresses the necessary qualifications of an expert witness to testify regarding the "*appropriate* standard of practice or care," not regarding an inappropriate or irrelevant standard of medical practice or care. Because an expert witness is not required to testify regarding an inappropriate or irrelevant standard of medical practice or care, § 2169(1) should not be understood to require such witness to specialize in specialties and possess board certificates that are not relevant to the standard of medical practice or care about which the witness is to testify. . . . .

Further, § 2169(1) refers to "the same specialty" and "that specialty." It does not refer to "the same specialties" and "those specialties." That is, § 2169(1) requires the matching of a singular specialty, not multiple specialties.

Under MCL 600.2169(1)(a), "if a defendant physician is a specialist, the plaintiff's expert witness must have specialized in the same specialty as the defendant physician at the time of the alleged malpractice." *Woodard*, 476 Mich at 560-561. And "if a defendant physician specializes in a subspecialty, the plaintiff's expert witness must have specialized in the same subspecialty as the defendant physician at the time of the occurrence that is the basis for the action." *Id.* at 562. Furthermore, under MCL 600.2169(1)(a), a proposed expert witness must hold the same board certification as the party against whom the testimony is offered. *Id.* at 562-563. Moreover, "if a defendant physician has received a certificate of special qualifications, the plaintiff's expert witness must have obtained the same certificate of special qualifications in order to be qualified to testify under § 2169(1)(a)." *Id.* at 565. However, "the plaintiff's expert does not have to match all of the defendant physician's specialties; rather, the plaintiff's expert only has to match *the one most relevant specialty*." *Id*. at 567-568 (emphasis added). The one most relevant specialty is "the specialty engaged in by the defendant physician during the course of the alleged malpractice." *Id*. at 560. This applies equally for subspecialties. *Id*. at 566 n 12.

*Woodard* addressed two cases. In the first, the defendant was board certified and specialized in pediatric critical care medicine. *Id*. at 575. The plaintiffs' expert was board certified in pediatrics but did not specialize in pediatric critical care medicine. *Id*. at 554-555. The plaintiffs' claim was based on the alleged improper placement of an arterial line and a venous catheter in an infant's legs while the infant was a patient in the pediatric intensive care unit. *Id*. at 554. The Supreme Court indicated that there was no dispute that the infant was critically ill when the procedures were performed. *Id*. at 575. The Court concluded "that the

trial court did not abuse its discretion in finding that the defendant physician was practicing pediatric critical care medicine at the time of the alleged malpractice, and, thus, pediatric critical care medicine [was] the one most relevant specialty." *Id.* at 576. Accordingly, the plaintiffs' proposed expert, who did not specialize in pediatric critical care medicine, was unqualified to testify and could not satisfy the requirements of MCL 600.2169(1)(a). *Id.*

In the second case, the defendant physician was board certified and specialized in general internal medicine and was practicing in that specialty at the time of the alleged malpractice. *Id.* at 556, 577-578. The plaintiff's proposed expert was also board certified in general internal medicine, but he devoted a majority of his professional time to treating infectious diseases, which is a subspecialty of internal medicine. *Id.* at 556. Accordingly, the plaintiff's proposed expert was unqualified to give testimony for purposes of MCL 600.2169(1). *Id.* at 578.

In the instant case, it is undisputed that Gencheff and Furman are both board-certified cardiologists. However, Gencheff holds a certificate indicating that he completed a fellowship in advanced interventional cardiovascular disease. Furman does not hold such a certificate. This certificate distinguishes the two physicians, although that distinction is relevant only if, at the time of the alleged malpractice, Gencheff was practicing interventional cardiology, making that the one most relevant specialty.

In the lower court, the parties did not dispute that Gencheff was first consulted about Norczyk's medical care after Norczyk arrived at the emergency room and while Gencheff was on call. Plaintiff argued that during this initial consultation, in a general, on-call-cardiologist capacity, Gencheff failed to make decisions and take actions necessary for Norczyk's well-being relative to the functioning of his heart. Accordingly, plaintiff argued in the trial court, and continues to argue on appeal, that the one most relevant specialty was that of a general, on-call cardiologist. In support of this argument, Furman executed an affidavit, separate from his affidavit of merit, indicating that he had been called upon to make decisions in similar situations within his role as a general cardiologist.[2] Defendants argued that the one most relevant specialty was that of an interventional cardiologist, because only an interventional cardiologist can perform cardiac catheterizations, the procedure that plaintiff alleged was not undertaken on a timely basis. Defendants did not submit an affidavit from Gencheff, let alone one in which he asserted that he was engaged in interventional cardiology with respect to his consultation and assessment of Norczyk prior to performing the catherization. Nor did defendants explain the

---

[2] In Furman's affidavit of merit, he averred:

> Under the circumstances existing in this case, Dr. Gencheff was required to promptly attend to Mr. Norczyk when called by Dr. Mackey, especially given his abnormal EKG upon presentation and his excessive bleeding from the dental procedure on Dual Antiplatelet therapy, realizing Mr. Norczyk was at high risk for a coronary event. When confronted with a high probability of Acute Coronary Syndrome, Dr. Gencheff should have immediately created a plan for revascularization, in addition to optimal Medical therapy.

difference between the practice of cardiology and the practice of interventional cardiology in the context of the circumstances of this case.

Attached to defendants' motion for summary disposition was a document prepared by the American College of Physicians that described the discipline of interventional cardiology, which stated:

> Interventional Cardiology represents advanced training in cardiovascular disease and focuses on *the invasive (usually catheter-based) management of heart disease.*
>
> Clinical issues usually managed by interventional cardiologists include:
>
> - Ischemic heart disease (percutaneous coronary intervention [angioplasty], stent placement, coronary thrombectomy)[;]
>
> - Valve disease (valvuloplasty, percutaneous valve repair or replacement)[; and]
>
> - Congenital heart abnormalities (repair of atrial and ventricular septal defects, closure of patent ductus arteriosus angioplasty of the great vessels)[.]

In Furman's affidavit that was submitted for purposes of responding to defendants' motion for summary disposition, the doctor stated:

> 3. At the time that Nelson Gencheff, D.O., was consulted by Elizabeth Mackey, D.O., he was being consulted in the standard role of a board-certified cardiologist who was on call for cardiac consultations for patients presenting to the emergency room. I have served as a board-certified cardiologist under the same and similar circumstances throughout my years as a physician.
>
> * * *
>
> 8. I have been consulted on patients in my capacity as a board certified cardiologist while on call countless times throughout my career. During all of these consultations, which are similar to the facts and circumstances present in the underlying lawsuit, I was qualified to act in my capacity as a board certified cardiologist, and my role under those situations did not involve the practice of interventional cardiology.

In a snippet from a deposition given by Furman in unrelated litigation, which was attached to defendants' motion for summary disposition, Furman testified that he engaged in the practice of diagnostic or "[n]oninvasive cardiology." In a deposition given by Gencheff in an unrelated case, Gencheff testified:

> I care for acutely ill patients that have coronary disease. I also work as a non-interventional cardiologist where I'm involved in interpreting tests—non-invasive tests in patients. I take care of heart failure. I manage lipids. I'm part of a research consortium here.

The documentary evidence makes quite clear that the difference between a cardiologist and an interventional cardiologist is that the latter is permitted or authorized to perform invasive procedures to address cardiac issues, whereas a general cardiologist engages in the practice of diagnosing, evaluating, and assessing cardiac problems but cannot perform invasive procedures.[3] We conclude that the one most relevant specialty here is cardiology, not interventional cardiology, because the allegations of medical malpractice do not pertain to negligence in the performance of invasive procedures, but instead concern failures by Gencheff to act relative to Norczyk's care and treatment, falling outside of and not encompassed by the performance of invasive procedures.

Defendants' position is built almost entirely on the proposition that, because plaintiff alleges that Gencheff was negligent in not timely performing a catheterization, and because only an interventional cardiologist can perform a catheterization, Gencheff was practicing interventional cardiology during the relevant timeframe. We disagree with defendants' logic; nothing in the record suggests that a general cardiologist is not just as capable as an interventional cardiologist in assessing a patient's need for a catheterization or other invasive procedure. We find it quite telling that defendants did not produce an affidavit or deposition testimony by Gencheff himself wherein he claims that he was practicing interventional cardiology, as opposed to general cardiology, with respect to Norczyk's care prior to invasive procedures being employed. And Furman's summary disposition affidavit averred that Gencheff "was being consulted in the standard role of a board-certified cardiologist who was on call for cardiac consultations for patients presenting to the emergency room." In sum, we agree with the trial court's determination that Furman's affidavit of merit submitted on behalf of plaintiff satisfied the requirements of MCL 600.2912d and MCL 600.2169, where the one most relevant specialty was cardiology, not interventional cardiology. Reversal is unwarranted.

Affirmed. Having fully prevailed on appeal, plaintiff is awarded taxable costs pursuant to MCR 7.219.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle

---

[3] In *Baqir v Principi*, 434 F3d 733, 735 (CA 4, 2006), the United States Court of Appeals for the Fourth Circuit noted that interventional radiology entails "performing invasive procedures such as catheterizations to treat blockages in coronary arteries with balloons, stents, and cutting devices."