*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA ALLBEE,

      Plaintiff-Appellee,

v

J. MILES MCCLURE II, M.D., and MID-
MICHIGAN HEART AND VASCULAR, PC,

      Defendants-Appellants.

UNPUBLISHED
January 7, 2021

No. 350128
Isabella Circuit Court
LC No. 17-014284-NH

Before: BOONSTRA, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

In this medical malpractice action, defendants, Dr. J. Miles McClure II, M.D., and Mid-Michigan Heart and Vascular, PC, appeal by leave granted[1] the trial court's order denying their motion for summary disposition. Defendants argue that the trial court erred by concluding that the most relevant specialty in this case was cardiology and that the trial court instead should have concluded that the most relevant specialty in this case is interventional cardiology. We agree. Accordingly, we reverse the trial court's order denying defendants' motion for summary disposition and we remand for further proceedings consistent with this opinion.

## I. UNDERLYING FACTS

In March 2016 Dr. McClure performed "invasive vascular procedures on [plaintiff's] lower extremities." Following this procedure, plaintiff experienced complications that ultimately resulted in the amputation of her left leg below the knee. Plaintiff filed suit and alleged that Dr. McClure was negligent in his actions, that he breached his duty of care toward her as his patient, and that his actions led to the amputation. Plaintiff obtained the services of two experts who agreed

---

[1] *Allbee v McClure*, unpublished order of the Court of Appeals, entered November 13, 2019 (Docket No. 350128).

-1-

to testify concerning the requisite standard of care and that Dr. McClure breached this standard of care.

Defendants eventually filed a motion for summary disposition under MCR 2.116(C)(10), arguing that they were entitled to summary disposition because plaintiff's experts did not spend a majority of their professional time in the specialty of interventional cardiology. Defendants pointed to MCL 600.2169, which requires a plaintiff's expert to practice in the same specialty as the defendant doctor and to spend the majority of the expert's professional time in that specialty. Although plaintiff's experts and Dr. McClure all practiced interventional cardiology, defendants contended that plaintiff's experts did not spend the majority of their time in the specialty; consequently, without other, qualified experts, plaintiff could not establish the standard of care, and her claim necessarily would fail. Plaintiff argued that the more general specialty of cardiology applied and that, because her experts spent a majority of their professional time in this specialty, summary disposition was improper. Alternatively, she argued that both cardiology and interventional cardiology applied and that her experts spent a majority of their time in these combined fields. The trial court denied defendants' motion for summary disposition and agreed with plaintiff's position that the more general specialty of cardiology applied. This appeal followed.

## II. MEDICAL MALPRACTICE

### A. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

The moving party has the initial burden to support its claim with documentary evidence, but once the moving party has met this burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). Additionally, if the moving party asserts that the nonmovant lacks evidence to support an essential element of one of his or her claims, the burden shifts to the nonmovant to present such evidence. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). Furthermore, "[w]e review de novo questions of statutory interpretation." *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008).

Finally, "[t]he trial court's decision regarding whether an expert witness is qualified is reviewed for an abuse of discretion." *Turbin v Graesser*, 214 Mich App 215, 217-218; 542 NW2d 607 (1995). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325-326; 760 NW2d 503 (2008). A decision on a close evidentiary question ordinarily cannot constitute an abuse of discretion, *Barr v Farm Bureau Gen Ins Co*, 292 Mich App 456, 458; 806 NW2d 531 (2011), but an erroneous application of the law is by definition an abuse of discretion, *Gay v Select Specialty Hosp*, 295 Mich App 284, 292; 813 NW2d 354 (2012).

## B. ANALYSIS

"A plaintiff in a medical malpractice action must establish (1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016) (citation and quotation marks omitted). In general, "expert testimony is required in a malpractice case in order to establish the applicable standard of care and to demonstrate that the professional breached that standard." *Id*. (citation and quotation marks omitted). But an expert witness is not required "when the professional's breach of the standard of care is so obvious that it is within the common knowledge and experience of an ordinary layperson." *Id*. at 21-22 (citation omitted). Finally, "[t]he proponent of the evidence has the burden of establishing its relevance and admissibility." *Id*. at 22 (citation omitted).

"The proponent of expert testimony in a medical malpractice case must satisfy the court that the expert is qualified under MRE 702, MCL 600.2955 and MCL 600.2169." *Elher*, 499 Mich at 22 (citation and quotation marks omitted). Only MCL 600.2169, which addresses the requisite qualifications to testify as a standard-of-care expert witness in a given case, is at issue here, and provides, in relevant part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> > (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.
>
> > (b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:
>
> > > (*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered

is licensed and, if that party is a specialist, the active clinical practice of that specialty.

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

In *Woodard v Custer*, 476 Mich 545, 558-559; 719 NW2d 842 (2006), our Supreme Court examined MCL 600.2169 and stated that the statute requires the plaintiff's expert to have the same *relevant* specialty and certification as the defendant doctor; the statute does not require the expert to match the defendant doctor in irrelevant specialties or certifications. Stated differently, the expert "must match the one most relevant standard of practice or care—the specialty engaged in by the defendant physician during the course of the alleged malpractice, and, if the defendant physician is board certified in that specialty, the plaintiff's expert must also be board certified in that specialty." *Id*. at 560. After consulting a medical dictionary to define the term "specialist," the Court explained:

Both the dictionary definition of "specialist" and the plain language of § 2169(1)(a) make it clear that a physician can be a specialist who is not board certified. They also make it clear that a "specialist" is somebody who can potentially become board certified. Therefore, a "specialty" is a particular branch of medicine or surgery in which one can potentially become board certified. Accordingly, if the defendant physician practices a particular branch of medicine or surgery in which one can potentially become board certified, the plaintiff's expert must practice or teach the same particular branch of medicine or surgery. [*Id*. at 561-562.]

Furthermore, the same rule applies to subspecialties because they are simply "a particular branch of medicine or surgery in which one can potentially become board certified that falls under a specialty or within the hierarchy of that specialty." *Id*. at 562. Indeed, "if a defendant physician specializes in a subspecialty, the plaintiff's expert witness must have specialized in the same subspecialty as the defendant physician at the time of the occurrence that is the basis for the action." *Id*. Finally, regarding the statute's "majority of his or her professional time" requirement, the Court stated that, by definition, an expert could not spend the majority of his or her time in more than one specialty. *Id*. at 566.

Relevant to this case, in *Estate of Norczyk v Danek*, 326 Mich App 113; 931 NW2d 59 (2018), this Court examined the differences between cardiology and interventional cardiology. In *Norczyk*, both the defendant doctor and defendant's expert were certified cardiologists. *Id*. at 119. The defendant doctor also was certified as having "completed a fellowship in advanced interventional cardiovascular disease," which plaintiff's expert had not received. *Id*. at 119-120. This Court stated that the fellowship "certificate distinguishe[d] the two physicians." *Id*. at 120. Examining the proffered evidence, this Court concluded that it was "quite clear that the difference between a cardiologist and an interventional cardiologist is that the latter is permitted or authorized to perform invasive procedures to address cardiac issues, whereas a general cardiologist engages

in the practice of diagnosing, evaluating, and assessing cardiac problems but cannot perform invasive procedures." *Id*. at 122.

Additionally, in *Estate of Horn v Swofford*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 349522), this Court recently addressed the issue of which of two specialties was the most relevant specialty for purposes of MCL 600.2169(1). In *Horn*, the alleged malpractice involved the reading of a computerized tomography (CT) scan of a patient's head. At the time he read the scan, the defendant doctor was engaged in the practice of diagnostic radiology, which is a specialty, *and* the practice of neuroradiology, which is a subspecialty of diagnostic radiology. *Id*. at ___; slip op at 6-7. Doctors practicing diagnostic radiology and neuroradiology could both read the CT scan at issue in the case, but an examination of the evidence demonstrated that, although the defendant doctor had been practicing in both specialties, the most relevant specialty was the subspecialty of neuroradiology because it was more specifically applicable to the facts of the case. *Id*. at ___; slip op at 7-8. Consequently, the plaintiff was required to have an expert witness who met the requirements to testify about the standard of care for the subspecialty of neuroradiology; the plaintiff was not required to have an expert witness who could testify about the standard of care for the more general specialty of diagnostic radiology. *Id*. at ___; slip op at 6-8.

When taken together, *Woodard*, *Norczyk*, and *Horn* establish that only experts who are qualified to testify about the one most relevant specialty can establish the standard of care in a medical malpractice case. Indeed, the distinction can be as fine as a subspecialty within a more general specialty and, as seen in *Horn*, ___ Mich App at ___; slip op at 6-8, if a specialist and a subspecialist can perform the same procedure then the subspecialty will control because it is more specific. Such is the case here. As explained in *Norczyk*, 326 Mich App at 122, "the difference between a cardiologist and an interventional cardiologist is that the latter is permitted or authorized to perform invasive procedures to address cardiac issues, whereas a general cardiologist engages in the practice of diagnosing, evaluating, and assessing cardiac problems but cannot perform invasive procedures." While it did not address the related issue of whether interventional cardiology is a subspecialty of general cardiology, the *Norczyk* Court did note that interventional cardiologists have a more specific scope of practice than general cardiologists. *Id*. Indeed, the American Board of Internal Medicine requires an interventional cardiologist to first be a general cardiologist and defines interventional cardiology as a subspecialty. As such, interventional cardiology is a subspecialty of general cardiology.[2] Consequently, if the alleged malpractice at issue in this case was an invasive procedure then the subspecialty of interventional cardiology applies, but if the alleged malpractice was an error of diagnosing, evaluating, and assessing cardiac problems then the specialty of general cardiology applies.

---

[2] Additionally, Dr. Robert Dieter, one of plaintiff's experts, described in his deposition the differences between interventional cardiology and general cardiology. As explained by Dr. Dieter, interventional cardiology and general cardiology are distinct areas of practice: general cardiology is the practice of diagnosing patients and knowing when to refer a patient for an invasive procedure while interventional cardiology is the practice of performing such procedures.

The evidence established that there was no genuine issue regarding whether Dr. McClure was operating as an interventional cardiologist at the time of the alleged malpractice. One of plaintiff's experts, Dr. Frank Funke, testified at his deposition that the procedure in this case was a peripheral endovascular intervention, and he explained that such procedures were often done by interventional cardiologists. Furthermore, he testified that it was "within the standard of care of an interventional cardiologist to perform these procedures." At Dr. McClure's deposition, he described the procedure as involving endovascular intervention, and, in his affidavit, Dr. McClure affirmed that the procedure involved interventional cardiology. Consequently, the alleged malpractice here was an invasive procedure, not a failure to diagnose, evaluate, or assess plaintiff's cardiac problems. As such, although engaged in the practice of the general specialty of cardiology during the procedure in question, like the defendant doctor in *Horn*, Dr. McClure also was practicing the subspecialty of interventional cardiology during the procedure in question. Consequently, given the type of procedure involved and the fact that Dr. McClure was practicing the subspecialty of interventional cardiology, the most *relevant* specialty that Dr. McClure was practicing at the time of the alleged malpractice was interventional cardiology, not general cardiology.

Plaintiff argues that Dr. Funke and Dr. McClure both testified that general cardiologists perform the procedure at issue in this case and, therefore, that general cardiology was the most relevant specialty in this case. But whether general cardiologists are capable of performing the procedure at issue here, or even if they routinely perform the procedure, does not determine the most relevant specialty, which is a preliminary question of admissibility for the trial court, pursuant to MRE 104(b), based on a conditional fact. Instead, as explained in *Horn*, ___ Mich App at ___; slip op at 6-8, when choosing between two potentially applicable specialties, the more specific specialty controls. Interventional cardiology, not general cardiology, is the specialty related to invasive procedures like the one at issue in this case. As such, the one most relevant specialty is interventional cardiology even though general cardiologists are capable of performing the procedure at issue in this case.

Plaintiff also takes issue with Dr. McClure's second affidavit in which Dr. McClure averred that he spent the majority of his professional time in the active clinical practice of interventional cardiology, contending that it directly contradicted his deposition testimony and initial affidavit of meritorious defense. We disagree. The deposition testimony plaintiff is referring to was a response Dr. McClure gave to a compound question. As such, we have difficulty determining what Dr. McClure meant with his answer, but we need not make any such determination because plaintiff argues that it is relevant to show that general cardiologists perform the procedure at issue here. As discussed, however, whether general cardiologists can perform the procedure at issue here has limited, if any, relevance to determining the most relevant specialty and, by extension, the applicable standard of care.

Dr. McClure's differing statements in his two affidavits, however, present a different issue. In Dr. McClure's initial affidavit, he averred that he spent the majority of his professional time in the active clinical practice of cardiology. Then, in his second affidavit, Dr. McClure averred that he spent the majority of his professional time in the active clinical practice of interventional cardiology. At first glance, these two statements appear to be inconsistent. But, as discussed earlier, interventional cardiology is a subspecialty of general cardiology and, therefore, the practice of interventional cardiology may also involve the practice of general cardiology. See *Horn*, ___

Mich App at ___; slip op at 6-7 (holding that the defendant doctor simultaneously practiced the specialty of diagnostic radiology and the subspecialty of neuroradiology). Consequently, we see no contradiction in the second affidavit, but merely a more definitive and specific explanation. See *Wallad v Access BIDCO, Inc*, 236 Mich App 303, 312-313; 600 NW2d 664 (1999) (stating that a party may submit an affidavit to clarify prior testimony or to be more specific).[3]

Finally, because the one most relevant specialty in this case is interventional cardiology, plaintiff's experts were required to have spent a majority of their professional time either practicing or teaching interventional cardiology. See MCL 600.2169(1)(a); *Woodard*, 476 Mich at 558-559, 561-562; *Cox v Hartman*, 322 Mich App 292, 301; 911 NW2d 219 (2017) ("A majority means more than 50%."). Plaintiff argues that defendants failed to ask her experts about how they spent their professional time and, therefore, the defendants cannot establish that plaintiff's experts fail to qualify as expert witnesses under MCL 600.2169(1)(b). But plaintiff, not defendants, was the proponent of plaintiff's experts and, as such, she had the burden to establish that they were qualified. See *Elher*, 499 Mich at 22 (holding that the proponent of expert testimony must establish that his or her experts are qualified). Plaintiff had the burden of establishing that her experts were qualified to opine about the standard of care and, therefore, if they did not testify about how they spent their professional time the fault lies with plaintiff, not defendants. In any event, after reviewing the record we conclude that plaintiff's experts did testify regarding how they spent the majority of their professional time and, therefore, we now turn to whether they spent the majority of their professional time practicing or teaching interventional cardiology.

In their depositions, Dr. Funke testified that he spent approximately 30% of his time in interventional cardiology, and Dr. Robert Dieter, plaintiff's other expert witness, testified that he spent 40 to 50% of his time in interventional cardiology. Dr. Dieter's subsequent affidavit did not clarify his qualifications as relevant here because he merely affirmed that he spent 90% of his time "as a cardiologist/interventional cardiologist." In doing so, Dr. Dieter improperly combined the

---

[3] We additionally note that plaintiff has not presented us with any argument, caselaw, or other authority establishing that Dr. McClure's statement in his initial affidavit that the applicable standard of care in this case is that of a general cardiologist is binding in this case. Plaintiff has similarly failed to address whether Dr. McClure's statement of the standard of care in his initial affidavit precluded him from later identifying a more specific standard of care. Thus, any such argument is abandoned. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority."). Furthermore, as explained in *Woodard*, "the one most relevant standard of practice or care" is "the specialty engaged in by the defendant physician during the course of the alleged malpractice," not necessarily the specialty that the defendant doctor spends the majority of his or her professional time practicing. *Woodard*, 476 Mich at 560. Consequently, whether Dr. McClure spent a majority of his professional time practicing general cardiology or the subspecialty of interventional cardiology is frankly irrelevant to a determination of which of those specialties is the most relevant specialty in this case. Instead, that conclusion rests on a consideration of which specialty Dr. McClure was practicing during the procedure that led to the alleged malpractice in this case. See *id*.

specialty of general cardiology with its subspecialty of interventional cardiology without delineating between the two. Dr. Dieter's statement could be sufficient to establish that he spent a majority of his professional time practicing general cardiology because, as explained earlier, the practice of interventional cardiology may include the practice of general cardiology, but Dr. Dieter's statement did not establish that he spent the majority of his professional time practicing interventional cardiology. Given that interventional cardiology is a subspecialty of general cardiology, plaintiff's experts were precluded from meeting the 51% requirement by combining it with the general specialty of cardiology.

Plaintiff offered an affidavit of Dr. Dieter, following his deposition. In it, Dr. Dieter addressed his deposition testimony, in which he had testified that 40 to 50% of his practice involved "cardiology/interventional cardiology." It is well-settled that in regards to a motion for summary disposition, "the content or substance of the evidence proffered must be admissible in evidence." *Maiden v Rozwood*, 461 Mich 109, 123; 597 NW2d 817 (1999). Facts on which admissibility is conditioned, see MRE 104(b), also are construed in the light most favorable to the non-moving party. See *id*. (discussing that proffered evidence was "plausibly admissible" under rules of evidence); see also *1300 LaFayette E Coop, Inc*, 284 Mich App at 526 ("[D]ocumentary evidence that would be 'plausibly admissible' at trial if a proper foundation is laid is sufficient to survive a C(10) motion.").

Here, Dr. Dieter's affidavit was offered to establish his qualifications to testify as a standard-of-care witness, in accordance with MCL 600.2169(1)(a), which is a preliminary ruling by the trial court. Construing the evidence in the light most favorable to plaintiff, the statement by Dr. Dieter in his deposition that "40-50%" of his practice is interventional cardiology establishes at most that Dr. Dieter spent half of his time practicing interventional cardiology, which is close to but insufficient to establish his qualifications, as it is not "a majority" of his time. Nor is this a mere technical reading based on possibly imprecise language by Dr. Dieter. The affidavit states "While reading the transcript of my deposition, my testimony concerning the percentages of my practice (my number of patients) involving cardiology, interventional cardiology, vascular medicine and endovascular medicine seemed to be somewhat confusing." Thus, Dr. Dieter recognized that the percentage of time spent on each subspeciality was of paramount importance, as the percentage of time devoted to each subspeciality are the only subjects addressed in the affidavit; and Dr. Dieter recognized that his deposition testimony was "somewhat confusing." Nevertheless, Dr. Dieter's affidavit still failed to establish that he spent a majority of his time practicing interventional cardiology and, as discussed, his earlier deposition testimony already established that he spent, at most, half of his professional time as an interventional cardiologist. Consequently, Dr. Dieter was not qualified to testify as an expert regarding standard-of-care.[4]

---

[4] "It is well settled that a party may not create an issue of fact by submitting an affidavit that contradicts prior deposition testimony." *Atkinson v City of Detroit*, 222 Mich App 7, 11; 564 NW2d 473 (1997). Because Dr. Dieter's affidavit fails to establish prima facie his qualifications as an expert witness, we need not consider whether his affidavit impermissibly contradicted his deposition.

Accordingly, the trial court erred by denying defendants' motion for summary disposition. The applicable specialty was interventional cardiology, and plaintiff failed to establish that either or both of her experts spent a majority of their professional time in this field. By determining that the experts were qualified to testify regarding the standard of care, the trial court abused its discretion. Without any other expert witness available to establish the standard of care and breach of that standard, plaintiff's entire claim fails; thus the trial court erred by denying defendants' motion for summary disposition.

## III. CONCLUSION

Plaintiff's proffered evidence fails, as a matter of law, to establish his experts' qualifications to testify as expert witnesses regarding the standard of care. As that was the only evidence by which plaintiff could establish the standard of care, his proofs necessarily fail as to one element of his alleged cause of action. Consequently, for the reasons stated in this opinion, we reverse the trial court's order denying defendants' motion for summary disposition and remand for proceedings consistent with this opinion. We do not retain jurisdiction. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Jonathan Tukel