*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRAVIS STRASSER,

Plaintiff-Appellee,

v

OAKWOOD HERITAGE HOSPITAL, OAKWOOD
HEALTHCARE, INC., BEAUMONT HOSPITAL-
TAYLOR, BEAUMONT HEALTH, and
BEAUMONT HEALTH SYSTEM,

Defendants,

and

GOKUL RAGHUNATH TOSHNIWAL, M.D., and
ANESTHESIA ASSOCIATES OF ANN ARBOR
PLLC,

Defendants-Appellants

UNPUBLISHED
November 4, 2021

No. 355496
Wayne Circuit Court
LC No. 18-014954-NH

Before: MARKEY, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendants Gokul Toshniwal, M.D., and Anesthesia Associates of Ann Arbor PLLC appeal by leave granted[1] the trial court's order denying their motion to strike plaintiff Travis Strasser's expert witness. We reverse and remand for entry of an order striking plaintiff's expert witness.

## I. BACKGROUND AND PROCEDURAL HISTORY

---

[1] *Strasser v Oakwood Heritage Hosp*, unpublished order of the Court of Appeals, entered January 27, 2021 (Docket No. 355496).

-1-

In his complaint, plaintiff alleged that on June 8, 2016, he went to defendant hospital[2] "for the purpose of care and treatment, more particularly an open reduction and internal fixation of his fractured left patella." Plaintiff contended that he "clearly and specifically informed all Defendants that he did not want any spinal or regional blocks for post-operative pain control." (Emphasis omitted.) The anesthesiologist for the surgery was Dr. Toshniwal. Plaintiff alleged that despite his directive that no nerve block be used, Dr. Toshniwal, shortly after the surgery was completed, performed "a post-operative regional block of the left adductor canal" absent properly-obtained informed consent.[3] Plaintiff maintained that Dr. Toshniwal subverted plaintiff's wishes by obtaining purported informed consent from other persons or plaintiff's family members. Plaintiff further alleged that the adductor canal block directly caused severe "left femoral neuropathy," resulting in the loss of "motor activities in the left leg, atrophy, pain, decreased sensation distribution, and numerous other problems."

In support of his medical malpractice complaint, plaintiff attached an affidavit of merit executed by Robert A. Savala, M.D. Mirroring language in the complaint, Dr. Savala averred that Dr. Toshniwal breached the applicable standard of care by failing to obtain informed consent from plaintiff, ignoring plaintiff's stated desire for no spinal or regional nerve blocks, supplanting plaintiff's wishes by obtaining consent from others, failing to explain the risks of doing a nerve block, including femoral neuropathy, and by not offering alternatives for pain control other than the adductor canal block. Neither in the complaint nor the affidavit of merit was it asserted that Dr. Toshniwal committed medical malpractice with respect to the actual performance of the adductor canal block. Dr. Savala and Dr. Toshniwal are both board-certified in anesthesiology and in the subspecialty of pain medicine.

According to defendants, plaintiff was treated with three narcotics, but he screamed and shouted about continued pain while he was in the post-anesthesia care unit (PACU). Dr. Toshniwal informed plaintiff that the opioid pain medications that he was receiving could not be given in higher doses, and the two then discussed the possibility of an adductor canal block being performed. Plaintiff allegedly told Dr. Toshniwal to do whatever he needed to manage the pain. Dr. Toshniwal obtained written consent from plaintiff's fiancée and administered the nerve block. Defendants claimed that a postoperative nerve block is commonly administered by an anesthesiologist to relieve pain related to the surgery.

---

[2] Our reference to "defendant hospital" pertains collectively to defendants Oakwood Heritage Hospital, Oakwood Healthcare, Inc., Beaumont Hospital-Taylor, Beaumont Health, and Beaumont Health System, which entities are not involved in this appeal.

[3] An "adductor canal block . . . is an interfascial plane block performed in the thigh. It anesthetizes multiple distal branches of the femoral nerve including the saphenous nerve and branches of the mixed sensory and motor nerves to the quadricep, as well as branches of the obturator nerve." Adam W. Amundson, M.D., and Rebecca L. Johnson, M.D., *Adductor Canal Block Procedure Guide* <http://www.uptodate.com/contents/adductor-canal-block-procedure-guide> (accessed August 30, 2021). In this opinion, we shall occasionally refer to the "adductor canal block" performed on plaintiff as a "nerve block."

In a motion to strike Dr. Savala as an expert witness, defendants argued that Dr. Savala was not qualified to testify against Dr. Toshniwal. In his deposition, Dr. Toshniwal testified that 30 to 40 percent of his practice concerned pain medicine, while 60 to 70 percent was devoted to anesthesiology. He performed three or four hundred nerve blocks every year. In answers to interrogatories, Dr. Toshniwal indicated that he provided "anesthesiology care and treatment [for plaintiff] during surgery and post-surgery on June 8, 2016." When asked at his deposition whether someone else could have provided different relief to plaintiff at the time, Dr. Toshniwal responded, "I'm the anesthesiologist." Dr. Toshniwal testified that he was present throughout the entire surgical process, including the period that plaintiff was in the PACU. Dr. Toshniwal observed that "[p]ostoperatively the opioids administered were not effectively managing Plaintiff's pain safely[;] [t]herefore, alternatives such as an adductor canal block were discussed with Plaintiff, his significant other, and the surgeon."

In his deposition, Dr. Savala testified that for many years 100 percent of his time was devoted to managing acute and chronic pain. According to Dr. Savala, some of his work takes place at an outpatient surgery center where various types of surgeries are performed. He indicated that he performs nerve blocks three days per week in his practice. Dr. Savala noted, however, that he had not performed a femoral nerve block, which would encompass the adductor canal block, in a dozen years. When asked why he had not done so, Dr. Savala explained:

> Well, because when it comes to those procedures, the operating room anesthesiologists are typically the ones that are providing those services. I'm providing, you know, nerve block procedures for the diagnosis and treatment of acute chronic pain problems; whereas, these femoral nerve blocks are most commonly used in preparation for perioperative treatment.

Dr. Savala further testified as follows:

> *Q.* I said I'm describing femoral blocks as being used to treat acute pain. You're calling it perioperative pain, but it's not chronic pain, correct?
>
> *A.* Well, what we typically do is that you are putting in these regional blocks, we call them peripheral nerve blocks, you know, whether that was femoral or . . . .
>
> *Q.* Right.
>
> *A.* [T]hose will typically be done preoperatively and in anticipation that you're going to use the pain relief, the analgesia and the anesthesia that you get from it, to aid in the performance of surgery and then to help treat postoperative pain. So we usually put them in before the case begins, but in some cases we use them afterwards, like in the case of [plaintiff].
>
> *Q.* Right. I've got it. Can we call the block that was done here a regional block?

*A.* Yes, you can.

*Q.* When is the last time that you performed a regional block to assist with the perioperative pain and postoperative pain?

*A.* Oh, boy, that was probably – oh, I'd say the last time I was in the operating room, so that was about a dozen years ago.

Dr. Savala asserted that the adductor canal block in this case was done for pain management. Dr. Savala testified about what "an experienced and professional anesthesiologist understands [regarding] possible scenarios . . . in controlling postoperative pain . . . ." He noted that "in anesthesia, more than any other field of medicine, [you must] really make sure that you understand the course of what's happening, because many times patients are incapacitated or unable to answer . . . questions." Dr. Savala opined that Dr. Toshniwal could have handled things differently in the operating room, such as administering longer-lasting opiates. Dr. Savala was of the view that Dr. Toshniwal had not communicated well with plaintiff before the surgery.

In the motion to strike, defendants argued that Dr. Toshniwal is a board-certified anesthesiologist who, although board-certified in the subspecialty of pain medicine, spends the majority of his time practicing anesthesiology. Therefore, according to defendants, anesthesiology and not pain medicine is the one most relevant specialty applicable to the instant case. Because Dr. Savala spent nearly 100 percent of his time in the practice of the subspecialty of pain medicine in the preceding 12 years, defendants maintained that he was not qualified to offer his testimony regarding the standard of care in this action.

Plaintiff responded that the case involved a pain-medicine procedure, not general anesthesia. Plaintiff pointed out that Dr. Toshniwal was the Pain Consultant Chairperson at Beaumont Taylor Hospital. Plaintiff argued that Drs. Toshniwal and Savala shared the same qualifications and that defendants were attempting to disqualify Dr. Savala merely because he spent the majority of his time in pain medicine. According to plaintiff, Dr. Toshniwal was performing postoperative pain medicine as indicated in his deposition. Plaintiff maintained that the pertinent conduct at the time of the alleged malpractice involved the management of pain, not anesthesiology in general. Plaintiff further noted that the action concerned informed consent rather than the surgery itself. In the alternative, plaintiff requested that the trial court allow him to amend his witness list if the court found merit in defendants' position. In challenging the motion to strike, plaintiff included an affidavit from Dr. Savala, which was separate and distinct from his affidavit of merit, averring that because the nerve block was performed after plaintiff's surgery, it was not related to the anesthesia given plaintiff by Dr. Toshniwal.

Defendants replied that the lawsuit involved anesthesiology, not pain medicine, and that anesthesia services entail postoperative nerve blocks. Defendants argued that management of a patient immediately before, during, and right after surgery is within the realm of an anesthesiologist, whereas pain medicine involves the management of chronic pain. Defendants emphasized that Dr. Savala had not performed the type of postoperative adductor canal block used in this case in over ten years because he had not been practicing anesthesiology.

At the hearing on the motion to strike Dr. Savala, the trial court ruled, in relevant part, as follows:

> I think it, it was a pain management procedure, the, the nerve block. [B]ased on the evidence, the documents that both sides presented, and then Woodard v Custer says that it's the relevant specialty that was being performed. And it is pain management. But this seems, to me, and maybe I just got lost in my head, it seems to be much ado about nothing, because, Plaintiff, I don't think, is alleging that the pain, pain management was done wrong. Or that the nerve block was done incorrectly. But it was done without consent. [Quotation format restructured.]

Defense counsel then voiced disagreement with the trial court that informed consent was the only issue. The court, however, renewed its belief that informed consent was the issue, not whether the actual procedure was "performed incorrectly." Plaintiff's counsel stated that the trial court was exactly correct—the case concerned informed consent, not negligence in the performance of the adductor canal block. The trial court reiterated that it was denying the motion to strike because it was clear that a pain-medicine procedure was at the heart of plaintiff's action, and, consequently, pain medicine was the one most relevant specialty.

An order was entered denying defendants' motion to strike Dr. Savala's testimony for the reasons stated on the record at the hearing. Defendants moved for reconsideration, submitting new affidavits from two expert witnesses, Paul Jaklitsch, M.D., a board-certified anesthesiologist who was not a pain-medicine doctor, and Dennis Dobrit, D.O., who was board-certified in both pain medicine and anesthesiology. Both opined that the one most relevant specialty for purposes of the instant lawsuit was anesthesiology. The trial court denied the motion for reconsideration, ruling, in pertinent part:

> Defendants reiterate their position that the one most relevant specialty . . . is . . . anesthesiology rather than pain medicine. This Court notes that Defendants have made an effort to bolster their position via submission of additional documentary evidence in the form of affidavits from alleged expert witnesses. However, Defendants' further development of the evidence is something that could have, and should have, been done the first time this issue was raised during the proceedings on the underlying motion to exclude the testimony of and strike expert Robert Savala, M.D. . . . [T]his Court's focus when reviewing a motion for reconsideration is limited to the initial, underlying motion, the evidence that was presented at time, and the arguments that were made in support thereof. As such, defendants' argument on this issue, as presented in the instant motion for reconsideration, remains unpersuasive.

Defendants appeal by leave granted.

## II. ANALYSIS

### A. APPELLATE ARGUMENTS

On appeal, defendants argue that the trial court erred by concluding that Dr. Savala was qualified to testify against Dr. Toshniwal. Defendants contend that although both doctors were board-certified in anesthesiology and pain medicine, Dr. Toshniwal was practicing anesthesiology at the time of the alleged malpractice, but Dr. Savala had been devoting 100 percent of his time to the practice of pain medicine, which is why it had been at least 12 years since Dr. Savala last performed a comparable nerve block. Defendants further maintain that the trial court erred by considering Dr. Savala's affidavit because it contradicted his deposition testimony.[4] Defendants additionally assert that the trial court should have taken into consideration the affidavits that they had offered on reconsideration in an effort to counter Dr. Savala's affidavit.

Plaintiff argues that the trial court properly ruled that the one most relevant specialty was pain medicine. And there is no dispute that Dr. Savala was board-certified in pain medicine and had been practicing pain medicine. Plaintiff notes that defendants relied in part on an expert in pain medicine for their affidavit of meritorious defense. Plaintiff also contends that defendants did not raise any issue below regarding the propriety of Dr. Savala's affidavit; therefore, that issue is unpreserved for appeal.

Defendants reply that it is illogical to conclude that Dr. Toshniwal was practicing anesthesiology before and during the surgery but immediately began practicing the specialty of pain medicine directly after the operation. As framed by defendants, Dr. Toshniwal did not suddenly change hats after the surgery.

## B. STANDARDS OF REVIEW

In *Estate of Horn v Swofford, DO*, __ Mich App __, __; __ NW2d __ (2020); slip op at 3-4, this Court, addressing whether the one most relevant specialty was radiology or neuroradiology, set forth the pertinent standards of review:

> This case turns on the interpretation of MCL 600.2169, and "[t]he construction of MCL 600.2169 presents a question of law subject to de novo review." *Crego v Edward W Sparrow Hosp Ass'n*, 327 Mich App 525, 531; 937 NW2d 380 (2019); see also *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). We review for an abuse of discretion a trial court's decision concerning the qualifications of a proposed expert witness to testify. *Crego*, 327 Mich App at 531. When a trial court's decision falls outside the range of principled and reasonable outcomes, the court abuses its discretion. *Id*. A court necessarily abuses its discretion when a particular ruling constitutes an error of law. *Id*.

## C. STATUTORY CONSTRUCTION

When construing a statute, the primary rule of interpretation is to discern and give effect to the intent of the Legislature, and the most reliable indicator of that intent is the plain language of the statute. *Crego*, 327 Mich App at 531. "Such language must be enforced as written, giving

---

[4] Again, we are not speaking of Dr. Savala's affidavit of merit; we are referencing the affidavit that was prepared and submitted as part of the motion for summary disposition.

effect to every word, phrase, and clause." *Id.* (quotation marks and citation omitted). Additional judicial construction is only permitted if the statutory language is ambiguous. *Id.* "When determining the Legislature's intent, statutory provisions are not to be read in isolation; rather, they must be read in context and as a whole." *Id.* (citation omitted).

### D. MEDICAL MALPRACTICE FRAMEWORK AND MCL 600.2169

"The plaintiff in a medical malpractice action bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 10; 651 NW2d 356 (2002) (quotation marks and citation omitted); see also *Estate of Horn*, __ Mich App at __; slip op at 4. "Failure to establish any one of these four elements is fatal to a plaintiff's medical malpractice suit." *Estate of Horn*, __ Mich App at __; slip op at 4 (citation omitted). In *Cudnik v William Beaumont Hosp*, 207 Mich App 378, 382; 525 NW2d 891 (1994), this Court noted that the "standard of care is founded upon how other doctors in that field of medicine would act and not how any particular doctor would act." (Quotation marks and citation omitted.)

MCL 600.2912d(1) requires a medical malpractice plaintiff to "file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169." MCL 600.2169 provides, in pertinent part:

(1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c)[inapplicable], during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is

licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

When a defendant doctor is a specialist, the expert witness for the plaintiff must have specialized in the same specialty as the defendant doctor at the time of the purported malpractice. *Woodard*, 476 Mich at 560-561; *Estate of Horn*, __ Mich App at __; slip op at 5; *Estate of Norczyk v Danek*, 326 Mich App 113, 118; 931 NW2d 59 (2018). The plaintiff's expert must have the same board-certification as the defendant physician if in fact the defendant is board-certified in the relevant specialty. *Woodard*, 476 Mich at 560; *Estate of Horn*, __ Mich App at __; slip op at 5; *Estate of Norczyk*, 326 Mich App at 118. Although specialties and board certificates must match, not all of them are required to match. *Woodard*, 476 Mich at 558; *Estate of Horn*, __ Mich App at __; slip op at 5; *Estate of Norczyk*, 326 Mich App at 118. "Because an expert witness is not required to testify regarding an inappropriate or irrelevant standard of medical practice or care, § 2169(1) should not be understood to require such witness to specialize in specialties and possess board certificates that are not relevant to the standard of medical practice or care about which the witness is to testify." *Woodard*, 476 Mich at 559. The language of MCL 600.2169(1)(a) only requires one specialty to match, not multiple specialties. *Woodard*, 476 Mich at 559; *Estate of Horn*, __ Mich App at __; slip op at 5. Stated otherwise, "the plaintiff's expert does not have to match all of the defendant physician's specialties; rather, the plaintiff's expert only has to match the *one most relevant specialty*." *Woodard*, 476 Mich at 567-568 (emphasis added); see also *Estate of Horn*, __ Mich App at __; slip op at 5; *Estate of Norczyk*, 326 Mich App at 118. The specialty that a defendant physician is engaged in during the course of the alleged medical malpractice constitutes the one most relevant specialty. *Woodard*, 476 Mich at 560; *Estate of Horn*, __ Mich App at __; slip op at 5; *Estate of Norczyk*, 326 Mich App at 118.

In *Woodard*, the Michigan Supreme Court discussed the meaning of the terms "specialty" and "specialist" as used in MCL 600.2169(1)(a), along with touching on the subject of subspecialties:

> Both the dictionary definition of "specialist" and the plain language of § 2169(1)(a) make it clear that a physician can be a specialist who is not board certified. They also make it clear that a "specialist" is somebody who can potentially become board certified. Therefore, a "specialty" is a particular branch of medicine or surgery in which one can potentially become board certified. Accordingly, if the defendant physician practices a particular branch of medicine or surgery in which one can potentially become board certified, the plaintiff's expert must practice or teach the same particular branch of medicine or surgery.

> Plaintiffs argue that § 2169(1)(a) only requires their expert witnesses to have specialized in the same specialty as the defendant physician, not the same subspecialty. We respectfully disagree. . . . [A] "subspecialty" is a particular branch of medicine or surgery in which one can potentially become board certified that falls under a specialty or within the hierarchy of that specialty. A subspecialty, although a more particularized specialty, is nevertheless a specialty. Therefore, if a defendant physician specializes in a subspecialty, the plaintiff's expert witness must have specialized in the same subspecialty as the defendant physician at the time of the occurrence that is the basis for the action. [*Woodard*, 476 Mich at 561-562.]

-8-

E.  CASELAW FACTUAL SCENARIOS

We shall now examine some of the particular circumstances addressed by this Court and our Supreme Court in the caselaw.  In *Woodard*, a fifteen-day-old child suffered leg fractures, allegedly caused by negligent medical care while the child was being treated in a pediatric critical or intensive care unit.  *Woodard*, 476 Mich at 554.  The defendant physician was board-certified in pediatrics and additionally held certificates of special qualifications in pediatric critical care medicine and neonatal-perinatal medicine, which certificates were considered the equivalent of board-certification.  *Id.* at 554, 565.  The plaintiff's proposed expert, however, was only board-certified in pediatrics and had no certificates of special qualifications.  *Id.* at 554-555.  The *Woodard* Court held that the one most relevant specialty in the suit was pediatric critical care medicine; consequently, the plaintiff's expert did not satisfy the same specialty requirement of MCL 600.2169(1)(a).  *Id.* at 576.

In *Hamilton v Kuligowski*, the companion case to *Woodard*, the underlying facts were presented as follows:

> Plaintiff alleges that the defendant physician failed to properly diagnose and treat the decedent while she exhibited prestroke symptoms. The defendant physician is board certified in general internal medicine and specializes in general internal medicine. Plaintiff's proposed expert witness is board certified in general internal medicine and devotes a majority of his professional time to treating infectious diseases, a subspecialty of internal medicine.  [*Woodard*, 476 Mich at 556.]

The Michigan Supreme Court ruled that the plaintiff's proposed expert did not qualify to give testimony with respect to the standard of care under MCL 600.2169, commenting that the expert himself conceded that he was "not sure what the average internist sees day in and day out." *Id.* at 577-578.

*Estate of Horn* concerned "a medical malpractice action involving the death of Linda Horn allegedly caused by the negligence of defendant Michael J. Swofford, D.O., with respect to his interpretation of a cranial computerized tomography (CT) scan . . . ." *Estate of Horn*, __ Mich App at __; slip op at 1.  Dr. Swofford was a board-certified diagnostic radiologist, whose additional board-certification in the subspecialty of neuroradiology had lapsed by the time of the alleged negligence, and the plaintiff's expert was board-certified in both diagnostic radiology and neuroradiology, the latter in which he spent the vast majority of his time. *Id.* at __; slip op at 6-7. The panel noted that the "difficulty that arises . . . is that while no longer a board-certified, or its equivalent, neuroradiologist, Dr. Swofford was undoubtedly engaged in interpreting a neuroimage when he examined Horn's CT scan"—"Horn's CT scan could have been interpreted by a neuroradiologist or a diagnostic radiologist." *Id.* at __; slip op at 7.  This Court held as follows:

> In this case, Dr. Swofford was, in fact, practicing neuroradiology when he examined and interpreted neuroimages—the CT scan of Horn's skull—and he potentially could obtain, as he had done in the past, board certification in neuroradiology. And therefore Dr. Swofford was acting or practicing as a "specialist" or "subspecialist" in neuroradiology, at least for purposes of MCL

600.2169(1) as interpreted by *Woodard*. Although Dr. Swofford was also practicing diagnostic radiology when he interpreted Horn's CT scan considering that diagnostic radiologists are credentialed to interpret neuroimages, neuroradiology was the one most relevant specialty. [*Id.* at __; slip op at 8.]

In *Reeves v Carson City Hosp (On Remand)*, 274 Mich App 622, 623; 736 NW2d 284 (2007), this Court addressed the following set of circumstances:

> Catherine R. and Anthony L. Reeves filed this medical malpractice action against several defendants, including Lynn Squanda, D.O., who is board-certified in family medicine, but was working in the emergency room at the time of the alleged malpractice. The Reeveses claimed that Dr. Squanda and others were negligent in failing to timely diagnose and treat Catherine Reeves's ectopic pregnancy. The Reeveses filed an affidavit of merit signed by Eric Davis, M.D., who is board-certified in emergency medicine, but not board-certified in family medicine.

The trial court in *Reeves* ruled that Dr. Davis was not qualified to give expert testimony against Dr. Squanda; however, the *Reeves* panel vacated the trial court's order. *Id.* at 624. The Court reasoned and held:

> In sum, because Dr. Squanda was practicing emergency medicine at the time of the alleged malpractice and potentially could obtain a board certification in emergency medicine, she was a "specialist" in emergency medicine under the holding in *Woodard*. Thus, plaintiffs would need a specialist in emergency medicine to satisfy MCL 600.2169; Dr. Davis, as a board-certified emergency medicine physician, would satisfy this requirement. However, the specialist must have also devoted the majority of his professional time during the preceding year to the active clinical practice of emergency medicine or the instruction of students. Because there is no information in the record regarding what comprised the majority of the expert's professional time, a remand for a determination on this issue is necessary. [*Id.* at 630.]

In *Estate of Norczyk*, the plaintiff alleged medical malpractice by the defendant physician for failure to properly assess the decedent's need for a heart catherization. The defendant doctor was board-certified in cardiology and the subspecialty of interventional cardiology, the former of which entails assessing, evaluating, and diagnosing cardiac problems and the latter of which involves the performance of invasive heart procedures. *Estate of Norczyk*, 326 Mich App at 115-116, 122. The plaintiff's expert witness was board-certified solely in cardiology, not interventional cardiology. *Id.* at 116. This Court held "that the one most relevant specialty here is cardiology, not interventional cardiology, because the allegations of medical malpractice do not pertain to negligence in the performance of invasive procedures but instead concern failures by [the defendant doctor] to act relative to [the decedent's] care and treatment, falling outside of and not encompassed by the performance of invasive procedures." *Id.* at 122-123.

## F. DISCUSSION AND RESOLUTION

We begin our discussion with a couple of issues that are procedurally problematic from defendants' perspective. With respect to Dr. Savala's affidavit, which defendants challenge on appeal, the issue was not preserved for review by an objection in the trial court and thus need not be reviewed. *Toaz v Dep't of Treasury*, 280 Mich App 457, 463; 760 NW2d 325 (2008). Moreover, the record does not reflect that the trial court placed any reliance on Dr. Savala's affidavit. We note that affidavits that are contrary to or conflict with deposition testimony may not be considered. *Casey v Auto Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2006). Regardless of the preservation failure and whether the affidavit conflicted with Dr. Savala's deposition testimony, substantive consideration of the affidavit does not alter our conclusion that Dr. Savala is not qualified to testify in regard to the standard of care in relation to Dr. Toshniwal.

Next, to the extent that defendants object that the trial court did not consider the affidavits that they provided on reconsideration, a trial court "has discretion on a motion for reconsideration to decline to consider new legal theories or evidence that could have been presented when the motion was initially decided." *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). We need not explore this issue because, for the reasons discussed below, we rule in defendants' favor absent consideration of the affidavits supplied by defendants in their motion for reconsideration.

There can be no reasonable dispute that the only reason Dr. Toshniwal placed or performed the adductor canal block was to control plaintiff's pain and that plaintiff's lawsuit concerned whether legally-sound informed consent was obtained with respect to that particular medical procedure. Therefore, at first glance, it would appear that the one most relevant specialty was pain medicine, which was essentially the exclusive focus of Dr. Savala's practice. But this case requires closer and deeper inspection. Although a pain-medicine procedure was used, the particular nerve block Dr. Toshniwal employed is most commonly used by anesthesiologists in connection with surgeries. Indeed, pain-medicine specialist Dr. Savala acknowledged that he had not performed a femoral nerve block in at least 12 years because "operating room anesthesiologists are typically the ones that are providing those services." While such regional nerve blocks are typically placed preoperatively, anesthesiologists occasionally perform them postoperatively. When the procedure to control plaintiff's pain is viewed within the context of the underlying surgery, it becomes evident that the one most relevant specialty is anesthesiology and not pain medicine. Moreover, during the year immediately preceding the date of the alleged medical malpractice, Dr. Savala had not devoted the majority of his professional time to either the active clinical practice of anesthesiology or to the instruction of students in anesthesiology. MCL 600.2169(1); *Woodard*, 476 Mich at 561-562.

Furthermore, plaintiff's medical malpractice action encompassed not only the events that took place after the surgery on his fractured patella and immediately before the nerve block was performed, but also events that occurred before the surgery when plaintiff allegedly stated his desire for no regional nerve blocks. The postoperative nerve block cannot be viewed in isolation or in a vacuum given the nature of plaintiff's lawsuit; rather, all of the circumstances surrounding the surgery must be considered, and it was the practice of anesthesiology and not pain medicine that was the relevant specialty when the circumstances are viewed more broadly, as is appropriate in this case.

In sum, the trial court erred by failing to strike plaintiff's expert witness, Dr. Savala, as he was not qualified to give standard-of-care testimony against Dr. Toshniwal. On remand, plaintiff may file a motion for permission to amend his witness list.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, defendants may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Mark T. Boonstra